[L. A. No. 19401. In Bank. Apr. 23, 1946.]

TWENTIETH CENTURY LITES, INC. (a Corporation), Appellant, v. CALIFORNIA DEPARTMENT OF EMPLOYMENT et al., Respondents.

Musgrove & Cannan and Robert M. Miller for Appellant.

Robert W. Kenny, Attorney General, and Clarence A. Linn and Doris H. Maier, Deputies Attorney General, for Respondent.

EDMONDS, J.—The California Employment Commission, acting under the same statute which was construed and applied in *Empire Star Mines* v. *California Employment Commission, ante,* p. 33 [168 P.2d 686], and *Briggs* v. *Cali-*

*fornia Employment Commission, ante,* p. 50 [168 P.2d 696] (Unemployment Insurance Act, Stats. 1935, p. 1226, as amended; Deering's Gen. Laws, 1939 Supp., Act 8780d) determined that certain persons who solicited orders for Twentieth Century Lites, Inc., were employees. Upon that finding it levied an assessment upon the corporation for taxes at the rate imposed by the statute. The amount was paid under protest and the corporation sued in mandamus to compel the commission to set aside its decision and make refund accordingly. The appeal is from a judgment discharging an alternative writ of mandamus and dismissing the corporation's petition.

The facts are undisputed. The business of the corporation is the manufacture and sale of neon advertising signs. The salesmen solicited orders for these signs and, after ascertaining the desires of a prospective customer, submitted a rough sketch of the proposed display to the company's art department which prepared drawings and estimated the cost of the installation. Occasionally, when only a small sign was desired, the salesmen did not consult the art department.

If the company's design and price was accepted by the prospect, the salesman obtained from the customer a signed order on a form furnished by the appellant. The salesmen signed these forms as representatives of the company, but it reserved the right finally to accept or reject an order. Also, the company passed upon each customer's credit rating, carried all credit accounts, and paid the salesmen commissions only upon accepted contracts. Requested changes in the installation or adjustments as to price could not be made by the salesmen without the company's approval. In practice, it was the custom of the salesmen to ascertain if the customer's order had been satisfactorily completed and to refer any complaints to the service department for adjustment.

The salesmen were furnished desk space and telephone service in the company's office. Each of them used cards indicating that he was its representative, corresponded with customers on company stationery, and signed letters as a member of the sales department. A "lead" service was maintained which was available to all salesmen, except in certain instances when the name of a prospective customer was given to only one of them. One salesman testified that they were required to call upon the "leads" given them by the company. At one time, he said, a salesman was prevented from

consummating a deal because the prospective customer was assigned to another person. Salesmen were not required to report regularly to the company's office, but they generally did so either by telephone or personally. When requested by the company they followed up a complaint and usually made a report concerning it.

The salesmen had the right to take their orders to other companies engaged in the same business, but in general practice Twentieth Century was offered the first opportunity to make the sale or lease. They were free to work for others or to devote as much time as they desired to other business activities, whether in competition with the appellant or not. They received no advances or loans from the company and were not given a drawing account.

There is evidence that on two occasions sales meetings were conducted, but no advertising material was furnished to the salesmen. They were not required to furnish a bond, to produce a minimum amount of business, nor to work fixed or regular hours. Their services were terminable without liability at the will of either party.

Not all of the salesmen had written contracts. However, one such agreement received in evidence provided that the salesman was to work diligently to sell or lease Twentieth Century's products, to solicit prospects and otherwise promote the business. He was also required to conduct his business and regulate his habits so as to increase the good will and reputation of the company. A further agreement of the parties was to conform to all laws, rules and regulations applicable to the business.

Other provisions of the contract were that the salesman was not to be restricted as to territory, time or method of sale, time devoted to the business, or the volume of business, nor required to submit reports of activities except as to completed deals. The salesman was given no authority to bind the company unless specifically authorized in writing to do so in a particular transaction. Subsequent to the termination of the contract, the salesman was not to use to his own advantage, or to the advantage of any other person, information gained from the files and business of the company relating either to sales, leases or contracts covering the products of the company. Concerning the relationship of the parties, the contract provided that in any action at law, the salesman should be construed to be a subagent only with respect to

customers for whom services were performed and otherwise deemed to be an independent contractor and not a servant, employee, joint adventurer or partner of the company.

The trial court's findings include substantially all of the facts which have been stated except some of the terms of the written contract. It is not true, the findings also declare, that Twentieth Century exercised no control over the salesmen; it is not true that the salesmen were independent contractors; and it is not true that the decision of the commission was improper, erroneous or unlawful or contrary to the provisions of the California Unemployment Insurance Act. Upon these findings, the court concluded that the payment of contributions by the corporation was not contrary to the provisions of the California Unemployment Insurance Act; that it was an ''employer'' within the meaning of the act; that the salesmen were in ''employment'' as such term is defined in the act and received ''wages'' from Twentieth Century; and that the decision of the commission was reasonable and proper.

The corporation, relying upon *Dare* v. *Board of Medical Examiners*, 21 Cal.2d 790 [136 P.2d 304]; and *Sipper* v. *Urban*, 22 Cal.2d 138 [137 P.2d 425], declares that it was the duty of the court to make an independent review of the facts presented. There is a presumption that the findings of fact of the board are correct, it qualifiedly admits, the presumption being applicable only when there is a conflict in the evidence or when different inferences may be deduced from the evidence. The appellant asserts that there is little conflict in the evidence and that most of the findings of fact of the commission and of the trial court are correct. But it urges that, upon the facts found by the commission, the administrative determination was unlawful, arbitrary and capricious because the salesmen were independent contractors not subject to the provisions of the Unemployment Insurance Act.

The decision of the commission determining that the salesmen were employees, the attorney general contends, ''should be vulnerable to attack only if it is shown that the board has acted arbitrarily or capriciously or that the determination was not supported by substantial evidence.'' He takes the position that rarely, if ever, will the determination of an administrative board be disturbed unless the person challenging it is able to show affirmatively a jurisdictional excess, a

serious error of law, or an abuse of discretion on the facts. The function of a trial court, he insists, is to determine "whether the Commission has properly performed its official duty and where the evidence is susceptible of two constructions, to take the view most favorable to the implied findings of the taxing authority." Accordingly, it is argued, as the trial court found that the conclusion of the commission is fully supported by the evidence, the decision should be affirmed. On the merits of the issue of employment, the attorney general follows the same line of reasoning advanced by him in the Empire Star and Briggs cases, asserting that under either a liberal or narrow interpretation of the provisions of the Unemployment Insurance Act, the salesmen were employees.

The factors to be taken into consideration in determining whether one who performs services for another is an employee or independent contractor are stated in *Empire Star Mines Co., Ltd.* v. *California Employment Commission, ante,* p. 33 [168 P.2d 686]. Those principles are determinative of the present controversy. It reasonably may be inferred from the evidence presented to the trial court that the salesmen were subject to the control of the company. The company had the right to terminate their services at will without cause. To some extent it restricted the salesmen's work to certain prospective customers. Every order for the sale or lease of a sign was subject to the company's approval. Changes in the design or plan of installation or adjustments as to price could not be made by a salesman without the company's approval. The written contract provided that the salesman was to work diligently for the advancement of the company's business and to regulate his habits so as to increase the good will and reputation of the company. Conformity with all rules and regulations pertaining to the business was required. Another factor tending to prove an employee status is that the salesmen were not engaged in a distinct occupation but carried on the regular business of the company which supplied them with some of the tools necessary to do this and with a place to work. And although different inferences may be drawn from the uncontradicted evidence, both the commission and the trial court found in favor of the employer-employee relationship.

No question has been raised upon appeal concerning the propriety of a proceeding in mandamus under the circumstances here shown and the decision of the trial court does

not make certain whether the case was tried upon that theory or as one brought under section 45.10 of the Unemployment Insurance Act. The findings of fact, consistent with a proceeding in mandamus, are to the effect that upon an independent review of the record of the commission, the salesmen were employees within the meaning of the statute. The same determination is expressed in another form, consistent with the scope of the findings in a statutory action. But either upon the theory that in a proceeding in mandamus following the administrative decision, the trial court independently reviewed the record and rendered judgment in accordance with its own findings upon the evidence before the commission (*Dare* v. *Board of Medical Examiners, supra,* 799, 801), or that the administrative record was used as presenting, by stipulation of the parties, the testimony of witnesses upon the issues in an action authorized by the statute, the evidence fully supports the conclusion that the salesmen were employees of the corporation and not independent contractors.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.