[Civ. No. 7216. Third Dist. May 4, 1946.]

CALIFORNIA EMPLOYMENT STABILIZATION COMMISSION, Respondent, v. N. N. S. MATCOVICH, Appellant.

Robert H. Schwab for Appellant.

Robert W. Kenny, Attorney General, and Clarence A. Linn and Doris H. Maier, Deputies Attorney General, for Respondent.

PEEK, J.—This is an action by the plaintiff commission to recover from defendant contributions alleged to be due plaintiff under the provisions of the California Unemployment Insurance Act. (Stats. 1935, p. 1226, Deering's Gen. Laws, Act 8780d). The findings and judgment of the trial court were in favor of plaintiff, and defendant has appealed.

A summary of the evidence in support of the judgment discloses the following facts:

Appellant was engaged in the business of operating a so-called "taxi dance hall," known as the "Rio Bar and Cafe," in the city of Sacramento, where soft drinks and beer were sold. In the operation thereof he engaged the services of various girls to dance with men patrons and aid in the sale of appellant's beer and soft drinks. Either before a girl went to work, or in some cases after she had danced a few times, appellant had her sign a printed card prepared by him which purported to make her a "licensee" and not an "employee" and read as follows:

"This is to certify that............is hereby granted the privilege of engaging in dancing with patrons of the undersigned at 416-18 K Street, Sacramento, California, in consideration of the payment to the undersigned of a portion of the money earned by her as mutually agreed upon.

"In granting this privilege, it is the intent hereof that licensee shall not become an employee of the undersigned and that she shall not become subject to the control of the undersigned.

"Licensee agrees to abide by all regulations established by the undersigned in the operation of his business.

"Dated...................., 193.....

Rio Ball Room
416 K Street, Sacramento, California
By....................

Accepted:
By...................."

A man was employed by appellant to sell dance tickets at ten cents each to the men patrons of the dance hall who in turn gave the tickets to the girls, one for each dance. Of this money the girls received five cents for each ticket turned in and five cents was retained by appellant. For their assistance in the sale of beer and soft drinks, the girls received tokens representing one-half of the amount paid by the respective patrons. Six per cent of the girl's share of the amount taken by her for dances and the sale of drinks was retained by appellant, on the ground that this amount was to cover the cost of free dances. In the case of free dances the patron did not have to buy a ticket or coupon for the dance, but could dance with a girl without charge. Apparently these dances were given to entice the patron on the dance floor and were for the benefit of appellant as much as for the benefit of the girls. The girl not only had to dance the free dance, but had to pay a percentage of her entire remuneration for the evening on account of these dances.

There was testimony that the appellant could and did on occasion discharge a girl at will and without incurring liability, and that the girls likewise were free to terminate the relationship at any time. However, while they were engaged in their occupation, they were expected to work every night; and if a girl stayed away for more than a week she was required to obtain appellant's signed approval before she could

resume work. If she desired to leave before the closing hour, it was necessary for her to secure the permission of appellant or of the special police officer who was an employee of and paid by appellant. She was forbidden to wear slacks at any time, although no such restriction was placed on couples who came from the outside to use the dance floor. She was instructed not to occupy a table with a patron or stand at the bar with him for more than fifteen minutes at one time, and at all other times when with a partner she was required to stay within the dancing enclosure. If unattached for a time, she could be directed to seek out a partner for dancing or drinking, and sometimes particular individuals would be designated to her for such purpose. Her behavior on the dance floor was the subject of the special officer's supervision, and she could be removed at his instance. The license for maintaining the dance hall was appellant's, as was also the license to sell alcoholic beverages.

The trial court found that these taxi dancers were in the employment of appellant, were not independent contractors, and were subject to the appellant's direction and control in the performance of their services.

The issues presented on appeal are:

(1) Whether or not the taxi dancers, whose status is in question, were in the employment of appellant within the meaning of section 6.5 of the California Unemployment Insurance Act during the period in question; and

(2) Whether or not the trial court erred in holding that a decision of the superior court in a prior action, involving a different period of time, to the effect that the taxi dancers were not in the employment of the appellant, is not res judicata as to the status of the taxi dancers involved in the present controversy.

 Manifestly, the printed card which appellant and the dancer signed, as a preliminary act in the establishment of the relationship between them, did not purport to evidence the complete agreement of the parties thereto. The card expressly stated that the consideration to be paid the undersigned was a portion of the money earned by the dancer "as mutually agreed upon." The terms agreed upon were apparently arrived at orally; and therefore the contract was in legal effect an oral contract. (6 Cal.Jur., § 150, p. 227; *Fabian* v. *Lammers,* 3 Cal.App. 109 [84 P. 432].) Conse-

quently, parol evidence was admissible to show the terms and conditions of the contract. (*Eng-Skell Co.* v. *Industrial Acc. Com.*, 44 Cal.App. 210, 212-213 [186 P. 163].)

■ Viewed by us in the light most favorable to respondent, the evidence noted above sufficiently discloses a situation wherein a complete power of control over the activities of the taxi dancers resided in the appellant, and whereby, through the instrumentality of the special police officer employed by him, he could and did exercise a direct control over the conduct of the girls as long as they were on the premises. These powers which he was potentially able to exercise without incurring liability, and which in some instances he did exercise, characterize the relationship in question as one of employer and employee within the meaning of the act. (*Empire Star Mines Co., Ltd.* v. *California Emp. Com.*, decided April 23, 1946, 28 Cal.2d 33 [168 P.2d 686]; *Twentieth Century Lites, Inc.* v. *California Dept. of Employment*, decided April 23, 1946, 28 Cal.2d 56 [168 P.2d 699]; *California Emp. Com.* v. *Los Angeles etc. News Corp.*, 24 Cal.2d 421, 425 [150 P.2d 186]; *Matcovich* v. *Anglim*, C.C.A. 9, 134 F.2d 834, cert. den. 320 U.S. 744 [64 S.Ct. 46, 88 L.Ed 441].) In addition, the circumstance that the dancers were free to terminate their services at will, without becoming legally obligated to appellant, is further evidence of the nonexistence of their alleged status as independent contractors. (See *Baugh* v. *Rogers*, 24 Cal.2d 200, 206-207 [148 P.2d 633, 152 A.L.R. 1043].)

■ Appellant complains of the action of the trial court in refusing to grant a nonsuit at the close of respondent's case, contending that the certificate on which respondent relied to establish a prima facie case, under section 45.1 of the act, was insufficient to raise a presumption of the existence of the relationship of employer and employee, and that the rule of *People* v. *Mahoney,* 13 Cal.2d 729 [91 P.2d 1029], which said court deemed applicable, did not cover the situation presented in the instant case. Even though we assume, without deciding, that appellant's contention is sound, this would not affect the ultimate decision herein, since the principle is well established that any error in denying a motion for nonsuit is rendered harmless where the asserted deficiency in the plaintiff's evidence is supplied by other evidence thereafter adduced. (2 Cal.Jur. § 610, p. 1025; 1 Cal.Jur. 10-yr. Supp. p. 639.) ''The denial of a motion for a nonsuit is not preju-

dicial error where facts sufficient to support the judgment are in evidence either before or after the denial of the motion. (*Cosby* v. *Cline,* 186 Cal. 698 [200 P. 801].) Whether or not denial of this motion was prejudicial error must depend upon our conclusions as to whether there was sufficient evidence to sustain the judgment." (*Parra* v. *Cleaver,* 110 Cal.App. 168, 170 [294 P. 6].)

The remaining issue presented involves the question of the effect of the judgment of the Superior Court of Sacramento County in a certain proceeding entitled "*California Employment Commission* v. *Matcovich,*" Sacramento Superior Court No. 59018, brought by respondent's predecessor, the Unemployment Reserves Commission, against the appellant herein, to collect contributions under the Unemployment Reserves Act (Stats. 1935, § 352, p. 1226) on account of the employment of the services of taxi dancers from January 1, 1936, to April 1, 1938. In that proceeding it was adjudged by the trial court that the taxi dancers there involved were independent contractors, and that the commission recover nothing by reason of its action. The judgment was entered February 6, 1940, and an appeal therefrom which was duly filed by the commission was dismissed pursuant to stipulation of counsel, November 16, 1940. Therefore such judgment has long since become final.

An examination of the record of said prior proceeding discloses that the issues therein, as presented by the pleadings, and as reflected by the findings and opinion of the trial court, are not identical with those in the present proceeding. In the earlier case there was no allegation or proof of a written contract of any kind, whereas in the present case the appellant has pleaded and relies largely on the existence of a written contract based on the printed card which we have discussed heretofore.

There is another difference bewteen the factual situations in the two cases which is even more material. It appears from the memorandum of opinion of the trial court in the former case that the manner in which taxi dancers were paid was entirely different from that adopted subsequent to the times therein involved. Thus, in the earlier case, the court, in its opinion, observed that "the women paid themselves from their own earnings after deducting therefrom the sum which they paid the owner of the hall as a place to work."

In the present case, the evidence clearly shows that the women did not pay themselves, but to the contrary were paid by appellant a share of the house earnings to which their services had contributed. The collections were made by the management and not by the taxi dancers. The dance tickets were purchased from appellant or his employee, and not from the girls. The drinks were purchased from appellant or his employee, and not from the girls. Each night, the girl turned in the tickets which her partners had purchased and exhibited the tokens she had received as evidence that her escorts had paid for the drinks, and she was paid by appellant or his employees her net percentage thereon.

The importance of this distinction in the facts, as herein found by the trial court and as revealed by the evidence, from the facts on which the former judgment appears to have been predicated, is readily apparent from a consideration of the settled principle that "The estoppel of a judgment extends only to the facts in issue as they existed at the time the judgment was rendered, and does not prevent a reexamination of the same questions between the same parties where in the interval the facts have changed or new facts have occurred which may alter the legal rights or relations of the litigants." (34 C.J., § 1313, p. 905.) The same rule applies whether the judgment be pleaded in bar or only by way of estoppel on certain issues. (15 Cal.Jur., § 201, p. 154; 34 C.J., § 1228, p. 808.) In *Silva* v. *Reclamation District No. 1001*, 41 Cal.App. 326, 329 [182 P. 786], this rule was applied to successive proceedings brought to determine the validity of assessments levied on the same lands in the hands of the same persons, and it was held that the judgment decreeing the first assessment invalid was not conclusive in the second proceeding where it appeared that the insufficiency of the plans and specifications on which said judgment was predicated had been cured prior to the levy of the second assessment. This decision has been cited by the Supreme Court as illustrating the principle that the doctrine of res judicata is not applicable in a case where "a cause of action arises out of the same subject matter, but upon a new set of facts not obtaining at the time of the former judgment." (*Price* v. *Sixth Dist. Agricultural Assn.*, 201 Cal. 502, 511 [258 P. 387].) To the same effect is *Timm* v. *McCartney,* 30 Cal.App.2d 241 [85 P.2d

920] ; on the former appeal, 9 Cal.App.2d 230, 235 [49 P.2d 315]. (See, also, *Blair* v. *Commissioner of Internal Revenue,* 300 U.S. 5, 8-9 [57 S.Ct. 330, 81 L.Ed. 465].)

For the foregoing reasons the judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.