[Civ. No. 7194. Third Dist. Aug. 10, 1946.]

CALIFORNIA EMPLOYMENT STABILIZATION COMMISSION, Appellant, v. PIO GUSMEROLI, Respondent.

Robert W. Kenny, Attorney General, Clarence A. Linn and Doris H. Maier, Deputies Attorney General, for Appellant.

Blaine McGowan for Respondent.

ADAMS, P. J.—This case is similar to *California Employment Stabilization Commission* v. *Wirta*, this day decided (*post*, p. 739), and it is conceded by appellant that it "presents a question of law virtually identical" with that presented therein. The action was instituted under the provisions of sections 37, 38 and 44 of the California Unemployment Insurance Act [Stats. 1935, p. 1226, as amended; 3 Deering's Gen. Laws, Act 8780d] for the collection of contributions for the period beginning April 1, 1937, and ending March 31, 1939. The trial court found that during the period alleged Gusmeroli entered into contracts with certain persons as independent contractors for the manufacture of redwood products; that he was not an employer and that he did not make payments of wages with respect to employments subject to the Unemployment Insurance Act; that whatever moneys he paid as set forth in the complaint were paid by him to various persons who performed independent contracts and were independent contractors and were not his employees. Judgment was rendered for defendant and after denial of a motion for new trial this appeal was taken.

The evidence shows that Gusmeroli, who was in the business of selling redwood split products and maintained a yard at Redway, Humboldt County, owned some 320 acres of redwood timber. It was his custom to give to men known as "tie-makers" what is referred to as a "lay-out" consisting of a strip of timber containing from 15 to 30 trees. These trees the tie-makers felled and made therefrom posts, ties, shakes, etc., which, if up to standard, were thereafter bought by Gusmeroli. The lay-outs would sometimes be assigned to one man and sometimes to two men. The only requirement of a man operating a lay-out was that the products he made must be up to the standards set in the split products industry or Gusmeroli would not buy them. No instructions were ever given by respondent as to how the standing timber should be felled. No tie-maker was required to work any specified time. He furnished his own tools and his transportation from his place of residence to the place where his work was done. He might take someone else to work with him

without consulting Gusmeroli and in such event Gusmeroli paid only the man to whom the original lay-out was assigned. Respondent checked the number of the products only when the tie-makers needed money or requested him to come into the woods. Without any directions from respondent the tie-makers manufactured from each tree the split products for which they deemed the tree most advantageous. Gusmeroli did not furnish board to any of the tie-makers nor was board given to them as a part of their compensation. He never paid any weekly wages or stipulated wages of any sort. The men worked as and when they pleased and if the holder of a lay-out became intoxicated for a period of time, which Gusmeroli said was not an uncommon occurrence, he could return and conclude working on his lay-out whenever he saw fit. Some men worked from daylight to dark, others worked only a few hours a day, and under their contract with Gusmeroli they were not required to work any specified time. One of the tie-makers who worked during the period involved in this litigation was a carpenter who worked on his lay-out part of the time and the rest of the time did carpentering work for others than Gusmeroli. Some of the tie-makers drew money every day, some every six months and some every one or two months. Respondent retained the right to cull the products and if they did not come up to the particular standard of the particular type of split product he could refuse to buy them. None of the men was ever paid any weekly wage or stipulated wage of any sort and no payment was made to anyone on the basis of time involved. No man was ever removed from the lay-out by respondent and respondent reserved no right to remove men from their lay-outs because they worked only a limited number of hours a day. The tie-makers furnished all of their own tools which consisted of drag saws, costing around $175, crosscut saws, costing from $25 to $30, and also .wedges, hammers, axes and all other tools necessary for the manufacture of split products. Also they furnished their own gasoline to operate the drag saws, and respondent never furnished any gasoline or any tools. Regardless of the time it took a man to make a product the price he received therefrom was the same. Respondent kept no foreman or timekeeper in the woods and did not act in either capacity himself. No man was told how to perform his work and no criticism was ever made of the way his work was done. No man was permitted to go on the lay-out as-

signed to another man, and no instructions were given as to wasting timber or material. There was no condition in the arrangement between respondent and the tie-makers that any of them could be discharged, the only condition being that if the products did not come up to standard respondent would not buy them. Any man holding a lay-out had a right to leave it at any time he wished and none of the men holding lay-outs was covered by workmen's compensation insurance.

The only distinction between the facts in this case and those in the Wirta case is that the evidence in this case does not show whether or not the tie-makers operating in Gusmeroli's timber purchased the trees from which they made their products or whether, if Gusmeroli ever refused to take such products, they were free to sell them to others. There is no evidence that any were so sold, but Gusmeroli stated that when men were given lay-outs ''the lay-out was theirs''; that all he wanted was the finished products. He also indicated that he considered the products as belonging to the tie-makers for he stated that he ''bought'' the finished products from them.

In *Empire Star Mines Co. v. California Employment Com.*, 28 Cal.2d 33, 43 [168 P.2d 686], the court stated the factors which distinguish an employee from an independent contractor. Of these the most important factor—the right to control the manner and means of accomplishing the results desired—is entirely lacking here. Gusmeroli testified in this connection ''I had good men working for me, they knew more about it than I did.'' Also lacking is any evidence of the right to discharge at will without cause. It appears from the evidence in this case, and that in the Wirta case, that the business of tie-making, or the making of split products, is a distinct occupation and a skilled one, and that in the locality the work is usually done by such specialists without supervision. Here also the tools necessary for the making of such split products were furnished by the operators, payment was not made by the time, and the parties apparently did not consider that they had created the relationship of employer-employee.

As was said in the Empire Star Mines, case, this evidence tends to prove that the tie-makers were carrying on their activities at their own risk, in their own way, for their own profit, and places the trial court's findings beyond the reach of an appellate court.

Appellant contends that since in *Pacific Lumber Co.* v. *Industrial Acc. Com.*, 22 Cal.2d 410 [139 P.2d 892], an award by the commission was affirmed and its finding that one Turkovich, a tie-maker, was an employee was held supported by the evidence, that it must follow that the tie-makers in the case before us must be held to have been employees of Gusmeroli. But the facts in that case are in some respects different from those in the case before us; and there the court said specifically that the question whether Turkovich was in the employ of the company at the time of his injury was a question of fact for the determination of the commission, and that in reviewing its findings the court was without power to disturb them unless there was a lack of substantial evidence.

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.