[Civ. No. 13104. First Dist., Div. Two. Oct. 21, 1946.]

CALIFORNIA EMPLOYMENT STABILIZATION COM-
MISSION, Appellant, v. ROGER C. LUND et al., Re-
spondents.

ROGER C. LUND, Respondent, v. UNEMPLOYMENT RE-
SERVES COMMISSION et al., Appellants.

Robert W. Kenny, Attorney General, and Clarence A. Linn
and Doris H. Maier, Deputies Attorney General, for Appel-
lant.

Crist & Beene for Respondents.

NOURSE, P. J.—Two actions were consolidated for trial—one brought by the commission to recover contributions, penalties and interest, the other brought by Lund to recover taxes, or contributions, paid under protest. Lund recovered in both on one judgment and the commission appeals on one record and one set of briefs.

Lund had been for a number of years the owner and operator of the Campus Garage in Palo Alto. He held the local agency for the Chrysler and Plymouth cars and maintained the garage as a storeroom and salesroom for these cars, for the storage or parking of cars generally, and for the servicing and repair of all cars brought in. The rear of the garage was set apart for the repair work and this space was divided into five stalls separated by fences or partitions and each containing benches and racks for the storage of tools and equipment of the individual workmen.

Prior to 1939 Lund managed the entire garage and employed mechanics to service and repair the cars brought in. During that year he had trouble with labor unions and abandoned the repair business. Some of his mechanics requested leave to rent space in the garage where they could operate the repair business independently. Leases were executed in March, 1939, which were superseded by others executed in November of that year. It is under these leases that respondent contends that these mechanics are independent contractors.

Taking the lease with R. E. Mailly, which is fairly typical of the others, we find these pertinent provisions: The lease covers stall "B" designated on the attached floor plan. The term is for one year with leave to the lessor to terminate at the end of a six months' period upon given 30 days' written notice. The lessee engages to pay all taxes, license fees, and other charges levied against his equipment or in connection with the business. The lessee agrees to care for the property leased to him and to make all repairs and improvements at his own expense. "The lessee may conduct his business as he sees fit and none of the provisions of this lease shall be construed as reserving to lessor any right to exercise any control or management over the business or operations of the lessee, and neither lessee, nor any person performing any duties or engaged in any work at the request of lessee upon the leased premises, shall be an employee or agent of lessor." The lessee undertakes to hold the lessor harmless from all claims on account of injury to or death of any person, including his em-

ployees, and from all claims on account of injury to property arising out of the operation of the leased premises.

All these leases were entered into by the lessor at the request of the lessees. Three of the leases permitted use of the designated premises, or stalls, for the motor vehicle repair business, one for the motor vehicle paint business, and one for the sheet metal business. All these activities were operated independently of the lessor. The latter did not retain and did not exercise any control or supervision over the lessees. They came to work and left at any time they saw fit; they were permitted to accept such cars of their own customers as they desired and were alone responsible to the owners for repairs made; they hired employees to assist them and paid their wages; they limited their operations to the spaces covered in the respective leases; they made their own arrangements with their customers covering time and cost of repairs; they supplied their own hand tools, purchased parts and supplies as needed; they alone carried workmen's compensation to cover helpers employed by them; they were not paid by the hour, but were compensated wholly by the charges which they made to the customers.

Appellant cites as circumstances tending to show an employer relationship that all bills were made out on billheads furnished by the lessor; some heavy equipment on the premises owned by lessor was used by the lessees without charge to them; the lessees were required to repair all motor vehicles requested by the lessor; they could give no credit without the express consent of the lessor; they were required to pay weekly to the lessor 50 per cent of the gross income; and their books were to be open to the inspection of the lessor. These are merely circumstances which might argue for a master and servant relation, but they are overcome by the other facts. Thus each of the lessees could employ each of the other lessees. The lessee would alone be liable to pay the compensation of the other lessee thus employed and to pay for his injury during the course of his employment. Each lessee was obliged to make good to the customer any damage arising out of poor workmanship.

On all the evidence the trial court found that the lessees were independent contractors and gave judgment for respondent in both cases.

The judgment is in accord with all the recent authorities.

*Empire Star Mines Co.* v. *California Emp. Com.*, 28 Cal.2d 33 [168 P.2d 686]; *Briggs* v. *California Emp. Com.*, 28 Cal.2d 50 [168 P.2d 696]; *California Emp. Stab. Com.* v. *Morris*, 28 Cal.2d 812 [172 P.2d 497]; *California Emp. Stab. Com.* v. *Gusmeroli*, 75 Cal.App.2d 735 [171 P.2d 913]; and *California Emp. Stab. Com.* v. *Wirta*, 75 Cal.App.2d 739 [171 P.2d 728]. In the Morris case, which is the last decided in point of time, the Supreme Court said: (p. 816) "The factors to be considered in making a determination as to whether, in a particular case, one performing services for another is an employee or an independent contractor have been fully stated by this court in recent decisions. Contributions to the Unemployment Insurance Act, it was held, may be assessed only upon amounts paid to employees; a principal for whom services are rendered by an independent contractor does not come within the scope of that legislation." One of the "recent decisions" is the Empire Star Mines Co. case. There the court, referring to these "factors" said: (p. 43) "In determining whether one who performs services for another is an employee or an independent contractor, the most important factor is the right to control the manner and means of accomplishing the result desired. If the employer has the authority to exercise complete control, whether or not that right is exercised with respect to all details, an employer-employee relationship exists. Strong evidence in support of an employment relationship is the right to discharge at will, without cause. (*California Emp. Com.* v. *Bates, supra* [24 Cal.2d 432 (150 P.2d 192)]; *California Emp. Com.* v. *Los Angeles etc. News Corp., supra* [24 Cal.2d 421 (150 P.2d 186)].)

"Other factors to be taken into consideration are (a) whether or not the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or

not the parties believe they are creating the relationship of employer-employee. (Rest., Agency, § 220; Cal.Ann. § 220.)''

The appellant does not question the decisive effect of the authorities cited, but it does not concede that those cases were correctly decided. Academically the argument is interesting. It may be that the lease arrangement was but a subterfuge to avoid the beneficent features of the Unemployment Act. On the other hand it is just as reasonable to assume that all parties were acting in good faith. Whatever the motive, the parties to this litigation followed the law as disclosed to them in the decisions of the reviewing courts and those issues must now be deemed "judicata."

██ Appellant argues that since the decision of the administrative body that these lessees were in fact in the employment of respondent is supported by substantial evidence that "decision" should be "affirmed." Just what is meant, by the statement is not clear. If the doctrine of res judicata is invoked the position is untenable. That defense runs only to the judgment of a court of competent jurisdiction. It does not apply to a body exercising administrative powers only. The Employment Commission has no judicial power. All these rulings were adverse to appellant in the Empire Star Mines case (p. 48). Appellant cites and relies on *Sipper* v. *Urban*, 22 Cal.2d 138 [137 P.2d 425]; *Dare* v. *Board of Medical Examiners*, 21 Cal.2d 790 [136 P.2d 304]; and *McDonough* v. *Garrison*, 68 Cal.App.2d 318 [156 P.2d 983], all of which involved the hybrid proceeding of mandamus-certiorari to review an order of an administrative agency. It seems to be appellant's theory that the same judicial thinking should be applied to an ordinary suit to recover a tax paid under protest. Such action, however, is also a special proceeding authorized by section 45.10 of the act (Stats. 1935, p. 1226; Deering's Gen. Laws, 1939 Supp., Act 8780d), and the rule contended for by appellant was also rejected in the Empire Star Mines case.

Appellant finds some comfort in *Twentieth Century Lites, Inc.* v. *California Dept. of Employment,* 28 Cal.2d 56 [168 P.2d 699]. The case was decided the same day as the Empire Star Mines and Briggs cases. The action was in mandamus to compel the Employment Commission to set aside its decision holding that operators of neon advertising signs were employees of the corporation. We find nothing in the Lites case

contrary to those heretofore cited. Other matters do not require further consideration.

Judgment affirmed.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied November 20, 1946, and appellant's petition for a hearing by the Supreme Court was denied December 19, 1946.