[L. A. No. 19030.   In Bank.   Apr. 23, 1946.]

L. D. BRIGGS, Respondent, v. CALIFORNIA EMPLOY-
MENT COMMISSION, Appellant.

Robert W. Kenny, Attorney General, and Clarence A. Linn
and Doris H. Maier, Deputies Attorney General, for Appellant.

Gray, Cary, Ames & Driscoll, Ward W. Waddell, Jr., Donald
B. White and John M. Cranston for Respondent.

EDMONDS, J.—L. D. Briggs, doing business as Knoxage
Water Company, sued to recover taxes levied under the Un-
employment Insurance Act (Stats. 1935, p. 1226, as amended;

Deering's Gen. Laws, 1939 Supp., Act 8780d) and paid by him under protest. As grounds for the reversal of the judgment in his favor, the California Employment Commission contends that the persons who performed services for him in the sale and delivery of bottled water were his employees and not independent contractors.

The facts are not in dispute. In the years 1938 to 1940, inclusive, the Knoxage Water Company sold its product through distributors who contracted in writing with Briggs and were assigned specific routes. The commission assessed Briggs for contributions assertedly due under the terms of the statute, the amount of the tax being based upon the income of these distributors from their sales. Upon the protest of Briggs, filed pursuant to section 45.10 of the act, a hearing was held and evidence taken by the examiner of the commission. The examiner concluded that the distributors were independent contractors and that the assessment levied upon their earnings should be cancelled. Upon exceptions to the examiner's report presented by its rules and regulations section, the commission reviewed the record and determined "that the distributors were subject to the direction and control of the petitioner [Briggs] to a great extent, and were in fact employees of petitioner."

Following this decision, Briggs paid, under protest, the amount of the contributions, with interest, assessed against him, and, in his complaint to recover the tax, alleged that the levy was invalid. The commission, by answer, admitted that payment was made as stated in the complaint but denied that it was illegally exacted. As a separate defense, the commission pleaded that, upon the evidence taken by its examiner, it had decided "that the water distributors were employees of . . . L. D. Briggs, doing business as 'Knoxage Water Company.' "

When the cause was called for trial, counsel for Briggs offered in evidence the record of the proceeding before the commission for the purpose of presenting the facts to the court as the basis for an independent determination upon them. The attorney general consented to the admission of the record into evidence but objected to its consideration "for any purpose other than to show the action taken by the Commission and the foundation upon which the Commission based its findings." He stipulated that if the witnesses who testi-

fied before the commission were produced in court, they would testify as disclosed by the record, but he objected to their testimony upon the ground that the law does not allow a trial de novo ''in the true sense of the word'', and in an action to recover taxes paid under protest following an administrative determination of liability, the court is bound by the findings of the commission. The objection was overruled and the cause submitted upon the record and the commission's certificate of assessment.

The evidence concerning the business methods of Briggs is uncontradicted. In the name of Knoxage Water Company, he entered into contracts for specified territories with various persons who were designated as distributors. The term of each agreement was three years and it was subject to renewal by mutual consent.

By the terms of these contracts, the company agreed to sell bottled water to the distributor at a stated price per bottle, to take back at invoice price any spoiled, deteriorated or unsaleable water, to protect the distributor against any decline in the resale price by rebates upon all stock in his possession at the time of the decline, and to cooperate with the distributor in furthering the sale of the product.

The contract required the distributor to purchase from the company all of the Knoxage water required by and supplied to customers in the territory assigned to him, to pay for the water in accordance with the prices and conditions fixed in the schedule of prices by the company, to sell the company's products at fixed prices, to keep his trucks painted and to cooperate with the company. Equipment furnished by the company, such as bottles, coolers, tilt racks and crates, were at all times to remain its property, and the distributor agreed to pay the market price for all equipment not returned or accounted for. The distributor undertook to use his best efforts in the furtherance of the sale of Knoxage water, and bound himself not to sell any other brand of water during the continuance of the contract or for one year thereafter. He also promised that, for one year after the termination of the contract, he would not solicit, divert or take away business of the company in the designated territory. By the terms of the agreement, the distributor was not to be deemed the agent of the company for any purpose other than that specifically stated.

In practice each distributor treated his contract as prop-

erty. Several of them sold their routes and assigned their contracts for amounts ranging from $1,000 to $1,700. The company was not a party, directly or indirectly, to these sales. Each distributor owned his own truck, which was painted to conform to a general plan of color and advertising signs. Several distributors employed helpers. Neither the salary of these helpers or any other expense of the distributors was paid by the company. However, the company furnished advertising material and loaned dispensing equipment designed to facilitate the use of its water.

The distributors serviced their routes whenever and as often as they chose and were not required to report at the company's plant at any particular time. They received no instruction whatever and were not required to make any reports or to handle any minimum quota of water. They extended credit to customers upon their own initiative and bore all losses by reason of bad debts. Generally accounts with the company were settled every two weeks.

The company had two routes which were operated with its own trucks. The driver of each of them, as compensation for the use of the vehicle, was charged an additional five cents per bottle. These persons did not pay for territorial rights and certain amounts fixed by the usual distributor's contract were not charged to them upon the termination of their services.

Licenses required by law were taken out in the name of the company but were paid for by the distributors. The company did not carry workmen's compensation covering the distributors, but the policies of public liability insurance obtained by each distributor upon his truck included the name of the company as one of the insured.

The name of a new customer obtained as the result of the company's advertising was given to the distributor serving the area in which he lived. Complaints from customers were handled in the same way.

Upon this evidence, the trial court found that Briggs, doing business as the Knoxage Water Company, was engaged in the business of selling spring, distilled and mineral water at wholesale to independent contractors who distributed and sold it at retail; that Briggs was not an employer as defined in the Unemployment Insurance Act and the assessments levied against him were not authorized by its provisions.

As grounds for a reversal of the judgment, the commission contends that the distributors were in the "employment" of

Briggs within the meaning of the Unemployment Insurance Act, *supra,* as that term is defined by the statute. Also, it is asserted, the court committed prejudicial error in allowing a trial de novo and refusing to accord the decision of the administrative board the weight to which it is entitled.

■ The relationship contemplated by the Unemployment Insurance Act is that of employer and employee, and it was not the intent or the purpose of the Legislature to include an independent contractor. (*Garrison* v. *State of California,* 64 Cal.App.2d 820, 824 [149 P.2d 711] ; see : *California Emp. Com.* v. *Bates,* 24 Cal.2d 432 [150 P.2d 192] ; *California Emp. Com.* v. *Los Angeles etc. News Corp.,* 24 Cal.2d 421 [150 P.2d 186].) And, as stated in the Empire Star Mines case (*ante,* p. 33 [168 P.2d 686]), "In determining whether one who performs services for another is an employee or an independent contractor, the most important factor is the right to control the manner and means of accomplishing the result desired. If the employer has the authority to exercise complete control, whether or not that right is exercised with respect to all details, an employer-employee relationship exists. Strong evidence in support of an employment relationship is the right to discharge at will, without cause."

■ The uncontradicted evidence concerning the contract of the distributors and the operations carried on pursuant to those agreements clearly shows that the water company had no right to control, nor did it, in practice, control the manner or means by which the route men sold water. Each of them was free to do as he pleased. He worked few or many hours with no requirement that he must sell any minimum quantity of water in a given period. He serviced his route whenever and as often as he chose and was not required to report at the company's plant at any particular time. He received no instructions and was not required to make reports. He extended credit or required cash at his discretion and bore all losses on debts. He did all of the work himself or hired helpers whom he paid. Although the record discloses that some of the equipment was furnished by the company, the distributor had to pay the company the market price of all equipment not returned or accounted for, and all but two of the distributors owned their own trucks. As the agreement was for a three-year period, the water company did not have the right to discharge the distributors at will without cause. Routes were sold without asking the permission of the company and often

without its knowledge. Under these circumstances, in every respect, the distributor was an independent contractor.

The administrative proceeding resulting in the determination which, the attorney general asserts, the trial court should have sustained because it is based upon substantial evidence, was brought under a different provision of the statute from the one invoked by the claimants in *Empire Star Mines Co.* v. *California Employment Commission, ante,* page 33 [168 P.2d 686]. However, the principles which were stated and applied in that case are governing here. By the record now before the court, it appears that following the protest of Briggs to an assessment levied against him by the Employment Commission in accordance with the provisions of section 45.5 of the statute, an administrative hearing was held. The examiner of the commission determined that the distributors were not employees of Briggs but independent contractors. Upon an appeal from that decision, the commission held to the contrary.

Thereafter, Briggs paid the amount assessed against him for contributions and commenced the present suit pursuant to the provisions of section 45.10 of the statute. As has been held in the Empire Star case, this is a statutory action for the purpose of obtaining a judicial determination upon the question of tax liability. Accordingly, the trial court was not bound by the findings or decision of the commission, and the testimony of the witnesses presented by stipulation fully supports the conclusion that the distributors were independent contractors.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied May 20, 1946.