[No. B047423. Second Dist., Div. Three. May 22, 1990.]

TOYOTA MOTOR SALES U.S.A., INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
MEICHUNG TANG LEE et al., Real Parties in Interest.

COUNSEL

Meyers, Bianchi & McConnell, Martin E. Pulverman for Petitioner.

No appearance for Respondent.

Vars, Pave, McCord & Freedman, and J. Patrick Jacobs for Real Parties in Interest.

OPINION

CROSKEY, J.—Petitioner, Toyota Motor Sales U.S.A., Inc. (Toyota), seeks a writ of mandate directing the respondent court to vacate its order

finding in good faith (Code Civ. Proc., § 877.6)[1] a settlement between the plaintiff and defendants Numero Uno No. 12, Yang Hai Lee and Meichung Tang Lee (collectively Lee). As it appears from this record that the trial court's ruling was based entirely on a conclusion regarding Lee's potential liability for plaintiff's injuries which is not supported by substantial evidence, we grant the writ.

## FACTUAL AND PROCEDURAL BACKGROUND

At least for purposes of the matter before us, there is no real dispute as to the relevant facts. The record presented by the parties reflects that this case arises from a rear-end automobile accident which occurred on August 28, 1987, in the city of Torrance, California. Defendant Christopher Heard (Heard), while delivering a pizza from Numero Uno No. 12, a pizza franchise owned by Lee, so operated his vehicle as to cause it to collide with the rear of plaintiff's vehicle. As a result, plaintiff sustained damages which included $13,000 in medical expenses and $900 in property damage.

On July 8, 1988, plaintiff filed suit against Lee, Heard and Toyota. She alleged that Heard was negligent in the operation of the vehicle and that Lee, as his employer, was vicariously liable under the doctrine of respondeat superior. The cause of action against Toyota alleged that it had defectively designed the seat belt installed in plaintiff's vehicle and that the belt's failure upon impact had contributed to her injuries.[2]

---

[1] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure. Section 877.6 provides, in pertinent part:

"(a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors . . . .

"(b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing.

"(c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

"(d) The party asserting the lack of good faith shall have the burden of proof on that issue.

"(e) When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate. The petition for writ of mandate shall be filed within 20 days after service of written notice of the determination, or within such additional time not exceeding 20 days as the trial court may allow . . . ."

[2] However, the record reflects an apparent factual dispute as to whether plaintiff was even wearing a seat belt. Obviously, the ultimate resolution of this issue will have a major impact on plaintiff's claim against Toyota.

Plaintiff made a demand upon the defendants for $500,000 to settle the entire case. Subsequently, Heard entered into a separate settlement with plaintiff for $100,000 which the court, on August 10, 1989, found to be in good faith within the meaning of section 877.6. The evidence in support of that determination included the fact that Heard was a 21-year-old student with few, if any, assets other than coverage for his car under his father's liability policy. The amount paid in settlement represented the full policy limits. Toyota did not object to the trial court's good faith determination with respect to this settlement.

Plaintiff then entered into a separate settlement with Lee in consideration of the payment of the sum of $15,000 which represented the full amount provided by Lee's liability policy. Over Toyota's objection the trial court found this settlement to be in good faith.[3] Based thereon, Toyota's cross-complaint against Lee for comparative equitable indemnity was dismissed. Toyota then filed a timely petition for a writ of mandate.

It is clear from a review of the record, that the good faith determination made by the trial court was based on its conclusion that Heard was not an employee of Lee, but rather was an independent contractor.[4] On that

[3] The record reflects that the court orally announced its ruling on December 22, 1989, at the time of the hearing on Lee's motion to have the settlement with plaintiff determined to be in good faith. The court signed and filed its formal order on January 4, 1990.

[4] At the outset of the good faith hearing on December 22, 1989, the court stated:

"THE COURT: At the moment we're persuaded that Heard was an independent contractor and therefore there would be no liability on the part of the moving parties, the Lees.

"And right now we're inclined to grant this motion and find that there was a good faith settlement by reason of the fact that their liability seems to be very limited."

Following argument by counsel in which there was discussed the various factors relevant to a determination of employee or independent contractor status, the court announced its decision in the following terms:

"THE COURT: My notes show that in addition to the contract [see fn. 7, *post*], contrary to what you say, the evidence indicates that Heard provided his own automobile, he paid his own expenses and insurance.

"He was paid on a commission basis depending on the jobs. It was not an hourly—it was not based on any hourly rate of performance. He pays his own Social Security and taxes. Nothing is withheld from his paycheck. And although the Lees prefer that he work during the evening hours, this was not a strict requirement and he more or less selected his own hours of employment.

"..........................

"THE COURT: Now I know you've pointed to some evidence to the contrary, but today this is not a motion for summary judgment where the court is prohibited from weighing evidence.

"This is a motion for a good faith settlement where we can weigh the evidence. And when we look at the factors in favor of the moving party as opposed to the evidence presented by you in opposition [referring to counsel for Toyota] it seems to me the Lees make out a good case for relief.

"..........................

"THE COURT: Okay. His motion will be granted for relief."

assumption Lee would have *no* liability to plaintiff, as the only theory against Lee asserted by plaintiff was based upon the doctrine of respondeat superior. There was no claim that Lee was independently negligent in hiring or using Heard's delivery services. In such circumstances, a settlement of $15,000 would clearly justify a finding that it was made in good faith. On the other hand, if Heard was an employee of Lee, acting in the course and scope of his employment at the time of the accident, then Lee might well be exposed to the potential of unlimited liability and the question of good faith would depend upon the trial court's evaluation of other factors (e.g., plaintiff's probable recovery and the extent of Lee's wealth) which were not reached or considered by the court.[5]

## ISSUE PRESENTED

■ Did the trial court abuse its discretion in finding that the settlement was in good faith? In light of the court's stated basis for its ruling, the answer to this question turns upon whether there was sufficient evidence upon which the court, in the exercise of its discretion, could have concluded that at trial the court might find that Heard was an independent contractor rather than Lee's employee.

## DISCUSSION

■ The determination as to whether a settlement is in good faith is a matter left to the discretion of the trial court. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 502 [213 Cal.Rptr. 256 [698 P.2d 159] (*Tech-Bilt*).) "The concept of judicial discretion is difficult to define with precision. In the past [the Supreme Court has] described it as 'the sound judgment of the court, to be exercised according to the rules of law.' (*Lent* v. *Tillson*, 72 Cal. 404, 422 . . . .) More recently [the court] said . . . that the term judicial discretion 'implies absence of arbitrary determination, capricious disposition or whimsical thinking.' (*In re Cortez*, 6 Cal.3d 78, 85 . . . . ) Moreover, discretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered. [Citations.]" (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65].)

The exercise of that discretion in the making of a determination as to "good faith" under section 877.6, "Like other judicial determinations, . . .

---

[5] Toyota offered evidence, developed on discovery, that Lee had significant assets and thus apparently could respond to damages substantially in excess of the $15,000 policy limit.

involves the resolution of a factual issue which, consistent with time-honored rules of appellate review, must be upheld if supported by substantial evidence. [Citations.]" (*Barajas* v. *USA Petroleum Corp.* (1986) 184 Cal.App.3d 974, 987 [229 Cal.Rptr. 513].) A determination as to the good faith of a settlement, within the meaning of section 877.6, necessarily requires the trial court to examine and weigh a number of relevant factors,[6] one of the most important of which is the settling party's proportionate liability. In making such examination, the court must look at the state of the evidence as it exists at the time the motion for a good faith determination is heard. (*Torres* v. *Union Pacific R.R. Co.* (1984) 157 Cal.App.3d 499, 509 [203 Cal.Rptr. 825]; *Tech-Bilt, supra,* 38 Cal.3d at p. 499.) If, as we will find the case to be here, there is no substantial evidence to support a critical assumption as to the nature and extent of a settling defendant's liability, then a determination of good faith based upon such assumption is an abuse of discretion.

■■■ As we have indicated, the critical and threshold question, upon which the trial court's factual determination of good faith depends, relates to the employment status of Heard. If the evidence on this point is such that there can be but one conclusion and that is that Heard was Lee's employee, then the ultimate factual issue of good faith must be made in light of Lee's exposure to unlimited liability. This obviously did not occur here. Indeed, the trial court's determination of good faith was based on exactly the opposite factual assumption.

■■■ Substantial evidence, of course, is not synonymous with "any" evidence, but is evidence which is of ponderable legal significance. It must be "reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular case." (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54]; *Kruse* v. *Bank of America* (1988) 202 Cal.App.3d 38, 51.) Thus, the focus is on the quality, not the quantity of the evidence. Very little solid evidence may be "substantial," while a lot of extremely weak evidence might be "insubstan-

---

[6]The factors and considerations to be taken into account in the trial court's determination of whether a settlement is in "good faith" include: "1. whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries; 2. a rough approximation of plaintiff's total recovery and the settlor's proportionate liability; 3. the amount paid in settlement; 4. the allocation of settlement proceeds among plaintiffs; 5. a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial; 6. the financial conditions and insurance policy limits of settling defendants; 7. the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants; [and] 8. the evaluation be made on the basis of information available at the time of the settlement." (*Barajas* v. *USA Petroleum Corp., supra,* 184 Cal.App.3d 974, 987; *Tech-Bilt, supra,* 38 Cal.3d at pp. 499-500.)

tial." (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (1989) § 8.50, pp. 8-12.)

■ Where conflicting inferences may reasonably be drawn, the determination of the trial court will be accepted on appeal even though a contrary determination would likewise be upheld. (2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 24, p. 39; *Washko v. Stewart* (1937) 20 Cal.App.2d 347, 348 [67 P.2d 144].) However, where the facts are undisputed, the issue is one of law and the appellate court is free to reach its own legal conclusion from such facts (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 288-290, pp. 300-303; *Mantonya v. Bratlie* (1948) 33 Cal.2d 120, 127-129 [199 P.2d 677]; *Isenberg v. California Emp. Stab. Com.* (1947) 30 Cal.2d 34, 40 [180 P.2d 11]; *Baugh v. Rogers* (1944) 24 Cal.2d 200, 206 [148 P.2d 633, 152 A.L.R. 1043].) It appears that this latter rule is applicable here as there is no dispute as to the facts; the parties have simply emphasized different factors.

■ The evidence, relevant to the legal status of Heard, offered by Lee and apparently relied upon by the court, was that he (1) provided his own car, expenses and insurance, (2) was paid on a commission (10 percent) basis for each delivery, (3) agreed to pay his own payroll (FICA) and income taxes, (4) agreed to provide his own workers' compensation coverage and (5) had signed a written agreement with Lee which acknowledged his status as an "independent contractor."[7] Lee, in accordance with the

---

[7]Because it is apparently central to the trial court's good faith determination as well as Lee's arguments in support thereof, we set out the terms of the agreement in full:
"AGREEMENT
"THIS AGREEMENT made and entered into this 9/4/86 day of _____ , by and between Christopher Marshall Heard (hereinafter referred to as "Independent Contractor"), and Yang Hai Lee dba _____ (hereinafter referred to as the "Client") located at 21141 Hawthorne Boulevard, Torrance, Ca. 90503, is made with reference to the following facts.
"A. INDEPENDENT CONTRACTOR is in the business of providing (delivery service) to business on a (contract) basis.
"B. THE CLIENT desires to hire Independent Contractor to provide (delivery) service for the store at the address listed above.
"THE PARTIES HERETO AGREE AS FOLLOWS:
"1. The Client agrees to pay the Independent Contractor as follows:
 "(a) $1.00 per delivery. (This amount is collected directly from the customer, as the $1.00 is built into the cost of the delivery).
 "(b) At the end of the night or the next day (as agreed upon by the Management and the Independent Contractor), the Client will pay a sum equal to 10% of the delivery sales, less the $1.00 charge built into the price of the delivery charge.
 "(c) The Independent Contractor pays the store for all delivery items. The store will charge the Independent Contractor the total amount of the delivery including tax, but less the $1.00 delivery charge. As the $1.00 delivery charge is in the total delivery charge, the

agreement, paid Heard for his services each day in a cash amount equal to 10 percent of the total charges for the pizzas delivered.

The evidence emphasized by Toyota demonstrated that Heard (1) was requested by Lee to work between 5 p.m. and 9 p.m. each day, (2) delivered pizzas to Lee's customers who had called in orders, (3) delivered pizzas at the times and to the customers and in the quantities as directed by Lee, (4) collected the money indicated on the customer's bill prepared by Lee and returned it (with any "shortages" to be deducted from the commission), and (5) could be terminated by Lee at any time "For Any Reason Whatsoever" upon 24 hours' written notice to him.

■ The most significant factor in determining whether the status of a person performing services for another is an employee or an independent contractor is the right to control the manner and means of accomplishing the result, that is, the details of the work. "If the employer has the authority

---

Independent Contractor receives his $1.00 delivery charge when he collects from the customer for the delivery.

"(d) The Independent Contractor will keep all gratuities (tips) he receives from his delivery service.

"(e) Services will consist only of delivery of items deemed appropriate by the store management.

"2. Independent contractor acknowledges that he is not being hired by the Client, but the Client is strictly contracting services mentioned in Paragraph 1 above.

"3. Independent Contractor agrees that he is responsible for the following:

"(a) Maintaining a valid automobile insurance policy with coverage to be approved by Numero Uno, maintenance and up-keep, gas and safe operating equipment.

"(b) Payment of appropriate payroll taxes to state and federal taxing authorities.

"(c) Maintaining appropriate workmans [sic] compensation coverage for principles and employees.

"4. Independent Contractor agrees that the Client shall be held harmless against any lawsuits which may result from any act of the Independent Contractor's services.

"5. Independent Contractor agrees that any cash value of product lost or stolen will be the responsibility of the Independent Contractor and any shortages will be deducted from the fee paid to the Independent Contractor by Numero Uno.

"6. The Client has the right to terminate this Agreement, FOR ANY REASON WHATSOEVER , upon twent-four [sic] (24) hours written notice to Independent Contractor.

"IN WITNESS WHEREOF , the parties hereto have executed this Agreement this 4th day of September, at Torrance, California.

"By /s/ Yang Hai Lee
"INDEPENDENT CONTRACTOR
"By /s/ Chris Heard

"Drivers License Number: C4685974
"Expiration Date of Drivers License: _____
"Vehicle License Number: 337TSR
"Insurance Policy Company Name: State Farm Insurance
"Insurance Policy Number: 1N69U7C178616"

to exercise complete control, whether or not that right is exercised with respect to all details, an employer-employee relationship exists." (*Empire Star Mines Co.* v. *Cal. Emp. Com.* (1946) 28 Cal.2d 33, 43 [168 P.2d 686], disapproved on another point in *People* v. *Sims* (1982) 32 Cal.3d 468, 479-480, fn. 8 [186 Cal.Rptr. 77, 651 P.2d 321]. ) Other factors are also to be considered. They, including the issue of employer control, are set forth in the Restatement Second of Agency section 220, as follows:

"(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

"(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b) whether or not the one employed is engaged in a distinct occupation or business;

"(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) the skill required in the particular occupation;

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f) the length of time for which the person is employed;

"(g) the method of payment, whether by the time or by the job;

"(h) whether or not the work is a part of the regular business of the employer;

"(i) whether or not the parties believe they are creating the relation of master and servant; and

"(j) whether the principal is or is not in business." (See *Tieberg* v. *Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 950, fn. 4 [88 Cal.Rptr. 175, 471 P.2d 975].)

However, the cases which have recognized the Restatement's multiple factor enumeration have emphasized that employer control is clearly the most important and the others merely constitute "secondary elements." (*Isenberg* v. *California Emp. Stab. Com., supra,* 30 Cal.2d at p. 39; *Tieberg* v. *Unemployment Ins. App. Bd., supra,* 2 Cal.3d at p. 950.) Moreover, it is not the control actually exercised, but that which may be exercised which is determinative. (*Malloy* v. *Fong* (1951) 37 Cal.2d 356, 370 [232 P.2d 241]; *S.A. Gerrard Co.* v. *Industrial Acc. Com.* (1941) 17 Cal.2d 411, 414 [110 P.2d 377].)

" 'One of the means of ascertaining whether or not this right to control exists is the determination of whether or not, if instructions were given, they would have to be obeyed.' (*Press Pub. Co.* v. *Industrial Acc. Com.* [(1922) 190 Cal. 114, 121 (210 P. 820)].) The real test has been said to be 'whether the employee was subject to the employer's orders and control and was liable to be discharged for disobedience or misconduct; and the fact that a certain amount of freedom of action is inherent in the nature of the work does not change the character of the employment where the employer has general supervision and control over it.' (*May* v. *Farrell* (1928) 94 Cal.App. 703, 710 . . . . ) 'Perhaps no single circumstance is more conclusive to show the relationship of an employee than the right of the employer to end the service whenever he sees fit to do so.' (*Press Pub. Co.* v. *Industrial Acc. Com.* (1922) . . . 190 Cal. 114, 120 . . . . )" (*Burlingham* v. *Gray* (1943) 22 Cal.2d 87, 99-100 [137 P.2d 9].)

Indeed, the unlimited right to discharge at will and without cause has been stressed by a number of cases as a strong factor demonstrating employment. (*Riskin* v. *Ind. Acc. Com.* (1943) 23 Cal.2d 248, 255 [144 P.2d 16]; *Empire Star Mines Co.* v. *Cal. Emp. Com., supra,* 28 Cal.2d at p. 43; *Malloy* v. *Fong, supra,* 37 Cal.2d at p. 370; *City of Los Angeles* v. *Vaughn* (1961) 55 Cal.2d 198, 201 [10 Cal.Rptr 457, 358 P.2d 913].)

▇▇ In light of such rules, it appears to us that the undisputed evidence in this case may be characterized very simply. Lee hired Heard to deliver pizzas to Lee's customers and directed and controlled (1) the number, nature and type of pizzas to be delivered, (2) the time when such deliveries

would take place, (3) the persons and locations to whom they would be delivered and (4) the price to be charged for each pizza and the total amount of money to be collected from each customer. In short, Lee determined what would be delivered, when and to whom and what price would be charged. What portion of Heard's work was left to his discretion and not subject to Lee's control? Did it include anything more than the route Heard would take to a customer's home or how fast he would drive? Such factors generally have been considered to be simply a freedom inherent in the nature of the work and not determinative of the employment relation. (See, e.g., *May* v. *Farrell* (1928) 94 Cal.App. 703, 710 [271 P. 789]; *Curcic* v. *Nelson Display Co.* (1937) 19 Cal.App.2d 46, 50 [64 P.2d 1153].) Moreover, it is at least arguable that Lee had the right to control this aspect of Heard's work as well. It would be Lee's obvious purpose and desire, and thus clearly part of Heard's responsibility, to get the fresh warm pizza to the customer as soon as possible. Indeed, it will doubtless be argued at trial that Heard's preoccupation with the necessity for prompt delivery contributed in some manner to the accident which allegedly caused plaintiff's injuries.

Essentially, the only evidence offered in support of the claim that Heard was an independent contractor was that he provided his own car, expenses and insurance. As already suggested, such circumstance would at most be a "secondary element" and, without more, worthy of little weight. Moreover, any emphasis on this factor is only justified if Heard can be likened to a route driver or distributor who by reason of the absence of control and the nature and manner of the performance of the services, could not be anything but an independent contractor. (See, e.g., *Briggs* v. *California Emp. Com.* (1946) 28 Cal.2d 50, 54-55 [168 P.2d 696]; *Mt. Meadow, etc.* v. *Indus. Acc. Com.* (1938) 25 Cal.App.2d 123, 129 [76 P.2d 724]; *Bates* v. *Industrial Acc. Com.* (1958) 156 Cal.App.2d 713, 719 [320 P.2d 167].)[8]

---

[8] In *Briggs* v. *California Emp. Com., supra*, 28 Cal.2d at pages 54-55, the court, in a case involving a route salesman of bottled water, described the factors which are typical of route salesman or distributor cases:

"The uncontradicted evidence concerning the contract of the distributors and the operations carried on pursuant to those agreements clearly shows that the water company had no right to control, nor did it, in practice, control the manner or means by which the route men sold water. Each of them was free to do as he pleased. He worked few or many hours with no requirement that he must sell any minimum quantity of water in a given period. He serviced his route whenever and as often as he chose and was not required to report at the company's plant at any particular time. He received no instructions and was not required to make reports. He extended credit or required cash at his discretion and bore all losses on debts. He did all of the work himself or hired helpers whom he paid. Although the record discloses that some of the equipment was furnished by the company, the distributor had to pay the company the market price of all equipment not returned or accounted for, and all but two of the distributors owned their own trucks. As the agreement was for a three-year period, the water company did not have the right to discharge the distributors at will without cause. Routes

When his relationship with Lee is compared to such occupations it is clear that Heard could not be properly characterized as an independent route driver or salesman. He was subject to Lee's total control as to all aspects of his job. When Heard reported to work, how long he worked, when he made deliveries and to whom and for what purpose were all dictated and controlled by Lee. Heard was at no risk whatever with respect to Lee's business or any of the pizza sales which were the subject of Heard's delivery services (except that his commission was subject to a charge for any "shortages"). His only responsibility was to deliver, collect the money and return. Finally, Lee retained the express contractual right to terminate the relationship at any time and without cause.

The remaining factors relied upon by Lee are entirely self-serving or equivocal and are of little or no value on the issue. The fact that Heard was paid on a commission basis is equally consistent with employee status. The agreement characterizing the relationship as one of "client—independent contractor" will be ignored if the parties, by their actual conduct, act like "employer—employee." (*Empire Star Mines Co. v. Cal. Emp. Com., supra,* 28 Cal.2d at p. 45; *Tieberg v. Unemployment Ins. App. Bd., supra,* 2 Cal.3d at p. 952.) Indeed, attempts to conceal employment by formal documents purporting to create other relationships have led the courts to disregard such terms whenever the acts and declarations of the parties are inconsistent therewith. (See, *Pacific Lbr. Co. v. Ind. Acc. Com.* (1943) 22 Cal.2d 410, 422 [139 P.2d 892]; *White v. Uniroyal, Inc.* (1984) 155 Cal.App.3d 1, 27 [202 Cal.Rptr. 141]; *Bemis v. People* (1952) 109 Cal.App.2d 253, 266 [240 P.2d 638]; *Lewis v. Constitution Life Co.* (1950) 96 Cal.App.2d 191, 194 [215 P.2d 55].)

Finally, the requirements that Heard pay his own payroll and income taxes and provide his own worker's compensation insurance are of no help whatever to Lee. These are merely the legal consequences of an independent contractor status not a means of proving it. An employer cannot change the status of an employee to one of independent contractor by illegally requiring him to assume burdens which the law imposes directly on the employer.

Thus, given the undisputed facts which were presented to the trial court in this case, there was no substantial evidence to support its apparent

were sold without asking the permission of the company and often without its knowledge. Under these circumstances, in every respect, the distributor was an independent contractor."

finding that Heard was an independent contractor. ██ ██ In our view, there is no reasonable conclusion that can be drawn from this record except that Heard was Lee's employee.[9] In the context of the good faith motion, Lee must be deemed exposed to the possibility of full vicarious liability to the plaintiff for any negligent act or omission of Heard occurring in the course and scope of his employment.[10] That being so, it was an abuse of discretion for the trial court to find the settlement with Lee to be in good faith based on the unsupportable conclusion that no such liability existed.

## DISPOSITION

The alternative writ is discharged. Let a peremptory writ of mandate issue directing the trial court to vacate its order of January 4, 1990, and to conduct a further hearing and proceedings in accordance with the views

---

[9] We, of course, do not intend by our decision to suggest that (1) the question of Heard's employee status, or (2) the issue of whether he was, at the time of plaintiff's injury, acting within the course and scope of such employment, have been finally resolved. These are issues which may ultimately be contested and litigated at trial. On a motion for a good faith determination under section 877.6, the trial court is charged only with making a "rough approximation" of a settling defendant's "proportionate liability" based on information "available at the time of settlement." (*Tech-Bilt, supra*, 38 Cal.3d at p. 499.) The trial court must decide this issue by reliance upon affidavits (which obviously precludes cross-examination) and it will not necessarily have before it all of the evidence which may ultimately be offered at trial on a disputed issue. Moreover, any good faith determination once made is unaffected by subsequent determinations made at trial as to the actual liability of the parties or the amount of damages sustained by a plaintiff. (*Barajas* v. *USA Petroleum Corp., supra*, 184 Cal.App.3d at p. 987.) Thus, any factual findings or determinations made on contested issues of liability or damages are tentative and solely for the purposes of evaluating the good faith of a proposed settlement *as of the date of such evaluation.*

On writ review, our determination is similarly circumscribed. It is limited solely to the question of the trial court's abuse of discretion in ruling on the good faith motion. As must the trial court, we rely upon the state of the record, and the respective showings made by the parties, as of the time of the motion.

[10] Certainly, such a result would be entirely consistent with the rationale for imposing respondent superior liability. An employer, quite apart from the issue of control, should be liable for those risks which are inherent in, or created by, the operation of the enterprise from which he stands to profit. Here, the actual occurrence (i.e., the injury to plaintiff as a result of Heard's negligence) was a reasonably foreseeable consequence of Lee's engaging in a business activity involving multiple deliveries of temperature-sensitive food products. This was a risk of Lee's enterprise and he, rather than the innocent plaintiff, should be required to bear it. This result is grounded upon " 'a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities.' (*Ira S. Bushey & Sons, Inc.* v. *United States*, 398 F.2d 167, 171 . . . . )" (*Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 618-619 [124 Cal.Rptr. 143]; see also, *Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 959-962 [88 Cal.Rptr. 188, 471 P.2d 988].)

expressed herein with respect to Lee's motion to determine that the settlement with the plaintiff was in good faith within the meaning of section 877.6.

Klein, P. J., and Danielson, J., concurred.