David BURROWS, Successor-in-interest, to Cody Burrows, deceased; Rhoda Thomas, individually and as Heirs and Surviving Parents of Cody Burrows, Plaintiffs—Appellants,

v.

REDBUD COMMUNITY HOSPITAL DISTRICT; Emergency Medical Management Services Inc.; Wolfgang Schug, Md.; M. Fred Brewer; Adventist Health, Inc.; JJ & R Emergency Management Group Inc.; Adventist–Redbud Hospital; Mark Freeman, M.D.; Michael H. Schultz, Defendants—Appellees.

David Burrows, Successor-in-interest, to Cody Burrows, deceased; Rhoda Thomas, individually and as Heirs and Surviving Parents of Cody Burrows, Plaintiffs—Appellants,

v.

Emergency Medical Management Services Inc.; Wolfgang Schug, Md.; Adventist Health, Inc.; JJ & R Emergency Management Group Inc.; Adventist–Redbud Hospital; Mark Freeman, M.D.; Michael H. Schultz, Defendants—Appellees.

No. 00–17119, 01–15115.
D.C. No. CV–96–04345–SI.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 2002.

Decided May 6, 2002.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

Before NOONAN and TROTT, Circuit Judges, and EZRA,* Chief Judge.

* Honorable David Alan Ezra, United States Chief Judge for the District of Hawaii, sitting by designation.

## MEMORANDUM **

This lawsuit concerns the death of eleven-month-old Cody Burrows, who was unsuccessfully treated over the course of a weekend at the Redbud Community Hospital, transferred to the Santa Rosa Community Hospital, and then transferred shortly thereafter to the University of California Medical Center, where he was pronounced dead. Cody's parents, David Burrows and Rhoda Thomas, sued i) Dr. Wolfgang Schug ("Schug"), ii) Dr. M. Fred Brewer, a pediatrician on call and available for consultation with the emergency room at Santa Rosa hospital, iii) Redbud Hospital, iv) the Redbud Community Hospital District, which owned and operated Redbud Hospital at the time of Cody's death, v) Adventist Health, Inc., a hospital group that provided administrative and managerial services to Redbud and later purchased the assets making up Redbud Hospital, and vi) the Janzen, Johnston & Rockwell Emergency Management Group of California, Inc. ("JJ & R"), a group that provided physician staffing services to Redbud Hospital.

Brewer was dismissed from the case. The Redbud District settled for $750,000, and the district court granted summary judgment for JJ & R and Adventist on vicarious and general liability and for the Adventist–Redbud hospital (the entity that resulted from the later purchase of the assets of the Redbud Hospital by Adventist) on the issue of successor liability. A jury acquitted Schug of medical negligence.

Cody's parents now appeal a number of the district court's rulings. They argue that the expert testimony and evidence presented required the jury to conclude

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

that Schug was negligent on ten different violations of the standard of care. They also argue that the district court was wrong to grant summary judgment motions finding that: (1) JJ & R was not liable vicariously, directly under statute, or under theories of general negligence; (2) Adventist was liable neither directly nor vicariously; and (3) Adventist did not incur successor liability when it purchased Redbud hospital. Finally, they argue that an obstruction of justice claim, which they recharacterize as §§ 1983 and 1985 claims, should not have been dismissed; and they argue that the district court abused its discretion in denying a new trial.

We AFFIRM the district court on all counts but one: we REVERSE the jury's verdict and REMAND for a new trial as to Schug.

*The Violation Of The Undisputed Standard of Care*

■ The case is unusual in that the jury gave a special verdict finding Schug not negligent; the trial court denied a motion for judgment notwithstanding the verdict and a motion for a new trial on the ground there was disputed expert testimony as to the standard of care; but we can find no such dispute reported in the transcript of the trial. The standard of care as to treating Cody's dehydration was undisputed.

Dr. Dieckmann, the plaintiff's expert witness, testified that water was required at Cody's presentation on February 25, 1996, at 11:17 A.M.; that "during the entire time he was in the emergency department," that is, up to 7:40 P.M., water was required, and that the amount of water required for the maintenance of the bodily functions for this child with a fever was 14 to 16 ounces. Dr. Deas, the defendants' expert, testified that the standard of care did not require Schug to start Cody "immediately" on fluids; but he answered the next question offered by defense counsel:

"The standard of care generally for a child who has nausea, vomiting, diarrhea, dehydration, anything in that direction, is initially you try to do oral fluids. That's sort of the gold standard of what you do first." (The symptoms Dr. Deas referred to were the symptoms Cody had shown). Further questioning by the defense elicited Deas's opinion that Cody at first was only "mildly dehydrated." To the question, "What is the gold standard as far as treating mild dehydration?," Dr. Deas answered: "Again, oral fluids would be the first thing you tried." No further questions were asked or answered as to the standard of care for treating Cody's dehydration through oral fluids.

Cody's chart shows that he was bathed in tepid water at 2:00 P.M. and that at 6:15 P.M., he received 1½ ounces of Pedialyte. Defense counsel also asked his expert if it violated the standard of care for Schug to start "immediately working on the temperature of Cody." The answer was no. The answer did not cover the nearly 7 hours in which no fluids were administered. By the undisputed standard of care, insufficient fluids were administered to Cody between 11:17 A.M. and 6:15 P.M. to maintain his bodily functions. The jury acted in disregard of the evidence in finding Schug not negligent. The court was in error as to the expert testimony when it denied the renewed motion for a judgment as a matter of law and for a new trial.

The jury did not reach the question of whether Schug's negligence caused Cody's death. We, therefore, cannot grant a judgment as a matter of law. We can and must, however, reverse a verdict contrary to the evidence and grant a new trial. Since we find that undisputed expert testimony established that Schug should have attempted oral rehydration soon after Cody was admitted, we grant a new trial solely on the issues of causation and, if necessary, damages.

*Other Violations of the Standard of Care*

Petitioners allege nine other violations of the standard of care, regarding communication with parents, diagnosis, treatment, and transfer. On each of these violations, we hold that the district court did not err in finding sufficient evidence to demonstrate that either Schug met the standard of care, or that the standard itself was in dispute.

*JJ & R's Vicarious and Direct Liability*

■ Petitioners argue that JJ & R was liable for Schug's actions on three theories. First, they argue that JJ & R was vicariously liable since Schug was an employee of JJ & R under California law. However, we decline to overturn the district court's finding that Schug is an independent contractor since his employment contract so stated and since JJ & R did not have the right to control how Schug practiced medicine. *Toyota Motor Sales U.S.A., Inc. v. Superior Court,* 220 Cal.App.3d 864, 269 Cal.Rptr. 647, 652–53 (1990) ("The most significant factor in determining whether the status of a person performing services for another is an employee or an independent contractor is the right to control the manner and means of accomplishing the result, that is, the details of the work.").

■ Second, petitioners argue that JJ & R was negligent because it had a non-delegable duty to meet statutory safety provisions, and, petitioners argue, Cody's transfer allegedly violated the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd (EMTALA) and Cal. Health & Safety Code § 1317. However, JJ & R is neither a "hospital" under EMTALA, nor a "health facility" under § 1317. *See, e.g., Eberhardt v. City of Los Angeles,* 62 F.3d 1253, 1256–57 (9th Cir. 1995) (no private rights of action against physicians because they are not "hospitals" under EMTALA); *Jackson v. East Bay Hosp.,* 246 F.3d 1248, 1260 (9th Cir. 2001) (a corporation providing administrative, purchasing, and managerial services to a hospital is not a "hospital" under EMTALA). Thus, JJ & R did not have such a duty.

Third, petitioners argue that JJ & R was directly negligent and liable under California law. However, since JJ & R was neither vicariously liable, nor liable directly under statute, its duties would extend only to prudent hiring and supervision. There was no evidence presented that these duties were breached.

*Adventist's Direct and Vicarious Liability*

Petitioners argue that the district court erred in granting summary judgment to Adventist on theories of direct and vicarious liability. However, no evidence of any breach of due care under direct liability theories was presented to the district court, and liability under negligence per se and joint enterprise theories was ruled out by this court in *Jackson,* 246 F.3d at 1260.

*§§ 1983 and 1985 Claims*

Since petitioners raise these claims for the first time on appeal, we consider them waived. *United States v. Missouri River Breaks Hunt Club,* 641 F.2d 689, 694 (9th Cir.1981).

*Adventist–Redbud Hospital's Successor Liability for Injunctive Relief*

Adventist–Redbud Hospital, the entity that resulted after Adventist purchased Redbud Hospital, is not liable for injunctive relief. The cases petitioners cite are inapposite. And since Redbud District settled all of its claims with petitioners, there is no liability on which to attach such injunctive relief.

*Motion for New Trial*

Petitioners argue they are entitled to a new trial because they were entitled to a negligence per se instruction, because Schug gave false testimony, and because the evidence presented at trial was overwhelmingly in their favor. The district court properly declined to give the negli-

gence per se instruction, since there is no private right of action under EMTALA, and since Cal. Health & Safety Code § 1317 does not apply to individual physicians. *Eberhardt*, 62 F.3d at 1256. The district court did not abuse its discretion in denying the new trial on the basis of Schug's alleged false testimony. Other than Schug's alleged failure to meet the standard of care by failing to give Cody oral fluids, the evidence presented in trial did not overwhelmingly favor petitioners.

*Conclusion*

The judgment of the district court is AFFIRMED in part, and REVERSED and REMANDED in part. Petitioners are granted a new trial on the issues of causation and damages from Schug's failure to promptly provide Cody Burrows with oral fluids.