Filed 9/30/16  P. v. France CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL RAY FRANCE,<br><br>    Defendant and Appellant. | A145537<br><br>(Mendocino County<br>Super. Ct. No. SCUKCRCR-14-76673-02) |

Defendant Michael Ray France was convicted of making a criminal threat.  He now appeals, arguing the evidence is insufficient to sustain the conviction, and the trial court erred by failing to sua sponte instruct on a lesser included offense.  We agree with the last contention and reverse.

## I.  BACKGROUND

Defendant was charged by information with one count of making a criminal threat in violation of Penal Code[1] section 422.  It was further alleged defendant suffered two prison term prior convictions.  (§ 667.5, subd. (b).)  A jury was unable to reach a verdict on the charges and a mistrial was declared on April 8, 2015.  A second jury trial commenced on May 26, 2015.  Two days later, the jury found defendant guilty of making a criminal threat.  The trial court found the prior conviction allegations to be true.  Defendant was sentenced to four years in state prison and ordered to pay restitution fines.

---

[1] All statutory references are to the Penal Code.

Defendant started a relationship with the victim, Ashley Toles, in November 2013. Around the same time, the two began living with each other. Toles described the early stages of the relationship as good, but said problems started in January 2014, around the same time Toles became pregnant with defendant's child. Toles testified defendant "would get violent." Defendant would hit Toles in the back of the head and grab her face and yell at her. Defendant would also hold Toles down by her neck and say, "[You] better love [me] or I am going to kill you." This scared Toles, and she told defendant "it was a temporary relationship if he was going to keep this up."

One incident of domestic violence started when defendant was picking on Toles's daughter. Toles intervened and told defendant she did not love him anymore. Defendant hit Toles and then blocked the door when she tried to leave, telling her, "You are not calling the cops." Defendant pushed Toles, and she hit him with a cup on the eyebrow. Defendant returned to the apartment three days later, and continued to live with Toles.

The police were called in response to another incident. Toles found pictures of naked women on defendant's phone. When Toles tried to take defendant's phone, he pushed her. The police arrived, though Toles testified she did not call them. Defendant was arrested. It is unclear whether any charges were brought in connection with the incident.

On March 17, 2014, about a month after the police were called, defendant stayed with Toles for the day. Toles told defendant she was not interested in continuing the relationship.

On March 23, defendant sent Toles a number of texts, which she did not see until March 26 because she left her phone at work. Among other things, defendant wrote: "[N]ow I really don't want to exist. Anymore. How about. I. Kill us. Both ashley what are u doing to me ur. Driving. Me insane.. I cant even focus"; "If. U. Dont. Talk. To. Me. Im gonna come to. Ur. Work And. Make. A Big. Scene"; "Ill come. Over. Right now"; "U. Pushed. Too far. Ashley. Im. Gonna. Snap on u. U. Dumb little Bitch.. U. Fucked up big fucking time."; "U. Totally fucking. Ruined my lifee. Im. Gonna. Destroy. Urs. Cunt"; "I [¶] want. A. Paternity Test on the. Baby"; "Im. Not. Fucking. Playing. With u.

2

Ashley. Ill come over. Right now and smack the dogshit out of. U... U better. Pick up"; "Im coming. Over right. Now."

When Toles saw defendant's texts on March 26, she wrote: "Wow I left my phone at work on Sunday. Your a piece of shit anyway. Have a nice life. And how dare you say this baby isn't yours. Fuck you." Defendant responded with more insults, and Toles threatened to call the police. Defendant threatened to "smash" in Toles's face. Toles texted: "Do It mother fucker," and defendant responded: "U. Better. Or im. Definitely. Gonna. Kll. U." Defendant also texted: "im. Gonna Come f.U.C.K. U. In. Ur ass with a pistol." Toles responded that she would call the police if defendant came to her door. She later testified she did not contact the police at that time because she did not have a working phone and she was sending texts through Wi-Fi. Toles also testified she felt threatened by the texts discussed above.

On the afternoon of the following day, defendant sent Toles more threatening texts, stating he would take his "[ch]ances fighting a murder. Case" if she continued to disrespect him. When asked how she took this text, Toles said she believed defendant "wasn't kidding." A few minutes later, defendant texted: "Im coming. To fuck. U up. Bitch. Right. Fucking. Now..who. Do u. Think ur. Talking. To. Bitch..." Toles responded: "Ha ha. I'm calling the Cops. They will be waiting for you." Defendant texted: "Ull still get. Touched. If the. Cops get me"; and "Keep..laughing bitch but im gonna knock all ur. Teeth out."

Defendant continued to send Toles texts later that evening. Defendant said his friend was going to "sell[] ur ass into slavery." He also asked Toles if "u wanna be treated like a punching bag" and said he was "not even 80yards away." Toles replied: "My door can withstand a zombie apocalypse.... So good luck with that Michael. I hated our sex... I hated our relationship. And I hate you most of all." Defendant texted he was going to break Toles's "stupid neck" and "take my life sentence with a smile." He also texted: "ill boot ur door in like nothing bitch. And I got a lockpick kit." Toles testified she believed defendant was not afraid of the consequences of what he might do. She also testified she felt nervous, like she had a rock in her stomach.

Toles stopped responding to defendant's texts at around 11:20 p.m. on March 27. Defendant continued to send Toles texts until 11:51 p.m. that evening. In the meantime, Toles called police. At 11:37 p.m., Officer Andrew Phillips was dispatched to Toles's residence. When Phillips arrived, Toles appeared "nervous" and "fidgety." Toles told Phillips she was scared because of the escalation of defendant's threats, defendant was a violent and unpredictable person, and he might physically hurt her. Toles showed Phillips defendant's texts and he helped her obtain an emergency protective order.

## II. DISCUSSION

### A. *Sufficiency of the Evidence*

Defendant argues the evidence was insufficient to sustain a conviction for criminal threats. We disagree.

We must affirm the jury's verdict if it is supported by substantial evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) On substantial evidence review, we " 'view the whole record in a light most favorable to the judgment, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the decision of the trial court.' " (*DiMartino v. City of Orinda* (2000) 80 Cal.App.4th 329, 336.) "We may not substitute our view of the correct findings for those of the [jury]; rather, we must accept any reasonable interpretation of the evidence which supports the [jury]'s decision." (*Ibid.*) "Substantial evidence, of course, is not synonymous with 'any' evidence." (*Toyota Motor Sales U.S.A., Inc. v. Superior Court* (1990) 220 Cal.App.3d 864, 871.) Rather, it is "evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.) The focus is on the quality, not the quantity, of the evidence. (*Ibid.*)

The elements of the offense of criminal threat are (1) the defendant "willfully threatens to commit a crime which will result in death or great bodily injury to another person"; (2) the defendant made the threat "with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out"; (3) "on its face and

4

under the circumstances in which it is made," the threat "is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat"; (4) the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety"; and (5) the threatened person's fear was reasonable under the circumstances. (§ 422, subd. (a); *People v. Toledo* (2001) 26 Cal.4th 221, 228.)

Defendant argues there is insufficient evidence to establish the fourth element. According to defendant, the earthy language Toles used in responding to his texts shows she was not in sustained fear for her safety. Rather she was "in the midst of a war of words, and loving it." Defendant points out Toles first received his texts on March 26, and did not call the police until near midnight on March 27. Defendant asserts Toles did not call the police out of fear, but because she wanted to punish him for his untoward comments.

We are not persuaded. Based on the severity and sheer volume of the threats made by defendant, the jury could reasonably infer Toles was in sustained fear for her safety. Over the course of 30 hours, defendant threatened to kill both himself and Toles, destroy Toles's life, "smack the dogshit out of" Toles, and smash in Toles's face. He also said he was "[d]efinitely" going to kill her, sodomize her with a pistol, and would take his "[ch]ances fighting a murder. [c]ase" if she continued to disrespect him. When Toles said she was going to call the police, defendant said she would still get "[t]ouched" if he was arrested. He also threatened to sell Toles into slavery, treat her like a "punching bag," break her neck, and "take [his] life sentence with a smile." These threats were made all the more credible by defendant's history of violence toward Toles, as well as his representations that he was only yards away, he would kick down Toles's door, and he had a "lockpick kit."

Toles herself said she was fearful of what defendant might do. She testified she "felt threatened" by defendant's initial texts. She also testified she believed defendant "wasn't kidding" when he said he would take his chances fighting a murder charge. Toles stated she believed defendant was not afraid of the consequences and, during the relevant

5

period, she felt nervous, like she had a rock in her stomach.  Officer Phillips corroborated Toles's statements, testifying she appeared nervous and fidgety when he arrived on the scene.

Looking at this evidence in the light most favorable to the judgment, as we must, we conclude there was more than sufficient evidence to support the conviction for criminal threats.  As defendant argues, it is possible the jury could have inferred Toles was not in sustained fear for her safety because her initial reaction to defendant's texts was to insult him rather than to call the police.  But that is not the only reasonable inference the jury could have drawn from this evidence.  It is just as reasonable to infer Toles was in sustained fear for her safety despite appearing defiant.  And Toles's decision not to immediately call the police may have been motivated by her fear of defendant and his threat she would get "[t]ouched" even if he was arrested.

## B.  *Instructional Error*

Finally, defendant argues his conviction for criminal threats must be reversed because the trial court failed to sua sponte instruct on the lesser included offense of attempted criminal threats.  The argument has merit.

We independently review a trial court's failure to instruct on a lesser included offense.  (*People v. Cook* (2006) 39 Cal.4th 566, 596.)  The trial court was required "to instruct fully on all lesser necessarily included offenses supported by the evidence," even in the absence of a request for such instructions.  (*People v. Breverman* (1998) 19 Cal.4th 142, 148–149, 154.)  "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury."  (*Id.* at p. 162.)  Thus, the court must instruct when there is " 'evidence from which a jury composed of reasonable [persons] could have concluded' " the defendant is guilty of the lesser crime but not the greater.  (*People v. Flannel* (1979) 25 Cal.3d 668, 684.)  When assessing the sufficiency of the evidence we may not weigh the credibility of the witnesses, "a task exclusively relegated to the jury."  (*Ibid.*)

6

As discussed above, a defendant commits the offense of criminal threat where (1) the defendant "willfully threatens to commit a crime which will result in death or great bodily injury to another person"; (2) the defendant makes the threat "with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out"; (3) "on its face and under the circumstances in which it is made," the threat "is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat"; (4) the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety"; and (5) the threatened person's fear was reasonable under the circumstances. (§ 422, subd. (a).)

"[A] defendant properly may be found guilty of attempted criminal threat whenever, acting with the specific intent to commit the offense of criminal threat, the defendant performs an act that goes beyond mere preparation and indicates that he or she is putting a plan into action. . . . [¶] A variety of potential circumstances fall within the reach of the offense of attempted criminal threat. For example, . . . . if a defendant, again acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not actually cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat. In [this] situation[], only a fortuity, not intended by the defendant, has prevented the defendant from perpetrating the completed offense of criminal threat itself." (*People v. Toledo*, *supra*, 26 Cal.4th at pp. 230–231, italics omitted.)

In this case, the trial court was required to instruct on attempted criminal threats because, even if defendant acted with the requisite intent and made a sufficient threat, there was substantial evidence Toles was not in fact in sustained fear for her safety. We concede defendant's threats were violent and immediate. But Toles's response to those threats could be interpreted to suggest she was not in sustained fear. Instead of

7

immediately calling the police, Toles traded insults with defendant for almost 30 hours. A reasonable jury could infer from this conduct that Toles was angry, not afraid. As discussed above, this is not the only reasonable inference that could be drawn from Toles's texts. Yet, it is not an unreasonable inference. Accordingly, the instruction on the lesser included offense should have been given.

We also conclude the trial court's failure to instruct on attempted criminal threats was not harmless error. In this context, we must reverse if it appears "reasonably probable" the defendant would have achieved a more favorable result had the error not occurred. (*People v. Breverman*, *supra*, 19 Cal.4th at p. 149, citing *People v. Watson* (1956) 46 Cal.2d 818.) As evidenced by the jury's failure to reach a verdict in the first trial, this was a close case. Thus, had the trial court instructed on criminal threats, it is reasonably probable the jury would have found defendant guilty of the lesser included offense but not the greater.[2]

## III. DISPOSITION

The judgment is reversed.

---

[2] Defendant also argues the trial court erred in denying his motion for a mistrial. As we are reversing for instruction error, we need not and do not reach the issue.

_____
Margulies, J.

We concur:


_____
Humes, P.J.


_____
Banke, J.